UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,                    CRIMINAL NO. 23-CR-20296

v.                                  HONORABLE JONATHAN J.C. GREY

D-2 SAMER KAMMO,

    Defendant.

_____/

## Government's Sentencing Memorandum

After amassing several prior convictions, Samer Kammo decided to exploit a global pandemic to fraudulently enrich himself and his family members. Kammo worked with his wife, Christina Anasi, and their co-conspirator, Rita Shaba, to obtain over $2 million of fraudulent PPP funds. In committing his fraud, Kammo did not hesitate to misuse the identities of other family members to obtain fraudulent loans in their names. Kammo and his wife then used those loan proceeds for their own, impermissible purposes.

Kammo's sentencing guideline range is **46-57 months' imprisonment**. For the reasons stated in this memorandum, the Court should sentence Kammo to a **51-month term of imprisonment**.

1

I. **Facts and Procedural History**

On May 24, 2023, Kammo was charged with one count of conspiring to commit wire fraud and bank fraud; one count of conspiring to make a false statement in connection with a bank loan; three counts of wire fraud; two counts of bank fraud; two counts of making a false statement in connection with a bank loan; and three counts of aggravated identity theft. On August 26, 2025, Kammo entered a guilty plea to conspiring to commit wire and bank fraud pursuant to a Rule 11 plea agreement. (ECF No. 67.) As part of that plea agreement, the government agreed to move to dismiss the remaining charges against Kammo.

In their plea agreement, the parties jointly recommended that the Court apply sentencing enhancements for an actual loss of $1.5-$3.5 million and the use of sophisticated means. (ECF No. 67, PageID.430.) The parties also recommended that the Court provide Kammo with credit for acceptance of responsibility. (PageID.428-29.) The Probation Department found the same guideline enhancements and reductions, determined a total offense level of 22, a criminal history category of II, and an advisory guideline range of **46-57 months' imprisonment**. (PSR ¶¶ 39-47, 80.)

II. **Section 3553(a) Factors**

The Supreme Court has noted that, in formulating the Sentencing Guidelines, the U.S. Sentencing Commission's goal is to carry out the objectives of 18 U.S.C. §

2

3553(a). *United States v. Rita*, 551 U.S. 338 (2007). While advisory, the Guidelines remain an important factor in fashioning a just sentence. This is because "it is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *Id.* at 350. Moreover, the Guidelines "should be the starting point and the initial benchmark" for choosing a defendant's sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007).

Here, the starting point is 46-57 months' imprisonment.

The guideline range in this case is particularly important because, as the Sixth Circuit has noted, "[o]ne of the central reasons for creating the sentencing guidelines was to ensure stiffer penalties for white-collar crimes and to eliminate disparities between white-collar sentences and sentences for other crime." *United States v. Davis*, 537 F.3d 611, 617 (6th Cir. 2008) (citations omitted). Specifically, Congress was concerned that, prior to enactment of the Sentencing Guidelines, "[m]ajor white collar criminals often [were] sentenced to small fines and little or no imprisonment. Unfortunately, this creates the impression that certain offenses are punishable only by a small fine that can be written off as a cost of doing business." S. REP. 98-225, 76, 1984 U.S.C.C.A.N. 3182, 3259,

    a. The Nature and Circumstances of the Offense

Pandemic assistance fraud was a massive problem within our local community and nationwide. Estimates indicate that more than $200 billion in

potentially fraudulent pandemic assistance loans were disbursed. *COVID-19 Pandemic EIDL and PPP Loan Fraud Landscape*, U.S. Small Business Administration (June 27, 2023), https://www.sba.gov/document/report-23-09-covid-19-pandemic-eidl-ppp-loan-fraud-landscape

Notably, Kammo's crime was not a one-time lapse in judgment. It was a crime completed time after time, with each falsified document and each fraudulent loan application. Kammo repeatedly made the decision to steal.

Kammo is responsible for securing at least six fraudulent loans as part of his conspiratorial conduct: Wireless Plus, D&H Market, Different Flavors 14355, C&S Liquor, W Shallal, and JD Hydro. (PSR ¶¶ 15-35.):

| PPP Entity (Loan Number) | Principal Obtained |
|---|---|
| Wireless Plus (1788467808) | $557,807.00 |
| W Shallal (2861767904) | $388,542.00 |
| JD Hydro (2859458009) | $386,667.50 |
| D&H Market (5222247408) | $564,032.00 |
| Different Flavors (9434978106) | $520,800.00 |
| C&S Liquor (4559707307) | $75,500.00 |
| Total | $ 2,493,348.50 |

4

In committing their crime, the conspirators misappropriated the identities of Kammo's mother's, his wife's uncle, and that of a third-party tax preparer. (PSR ¶¶ 17-19, 29, 32.) The conspirators also obtained fraudulent loans for two of Kammo's cousins and then accessed those fraudulent loan proceeds. (PSR ¶¶ 29-34.)

Discussions between the co-conspirators show that Kammo was responsible for providing the third-party identities used as part of the fraud. As Kammo told Shaba during an argument: "I Brong all these motherfuckers to the table":



5

### b. History and Characteristics of the Defendant

Unfortunately, this is not Kammo's first run-in with the criminal justice system. He was previously sentenced to 36 months in federal custody for significant controlled substance activity. (PSR ¶ 48.) Kammo has also been convicted for retail fraud and bad check crimes on two separate occasions; arrested for violent activity at least three times as an adult; and also arrested for additional drug activity. (PSR ¶¶ 49-52.) Kammo also engaged in extremely dangerous criminal activity as a juvenile. (PSR ¶ 60.)

Kammo's prior run-ins with law enforcement, and a significant prior federal custodial sentence, did not deter him from engaging in this fraud.

### c. Seriousness of the Offense, Promotion of Respect for the Law, and Just Punishment for the Offense

This is a serious offense. Pandemic fraud stole from honest taxpayers. And such schemes make it more difficult for deserving businesses and individuals to receive needed assistance in the future.

Notably, Kammo has already received a significant break in this case by virtue of the government's agreement to dismiss the multiple aggravated identity theft charges he faced, which would have guaranteed an additional two-year consecutive prison sentence. He also received a significant break because of the government's agreement not to pursue an intended loss calculation that accounted for the multiple fraudulent conspiratorial loan applications that were denied.

A substantial custodial sentence is needed to reflect the seriousness of the offense, promote respect for the law, and ensure a just punishment

### d. Adequate Deterrence and Protection of the Public

Government benefit fraud is both highly lucrative and frequently undetected. It is this combination that makes general deterrence a particularly important objective in this case. *See United States v. Heffernan*, 43 F.3d 1144, 1149 (7th Cir. 1994) ("Considerations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it.").

Furthermore, as the Sixth Circuit has recognized, "[b]ecause economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." *United States v. Peppel*, 707 F.3d 627, 637 (6th Cir. 2013) (citations omitted).

An unambiguous message of deterrence should be sent to others who might be tempted to steal millions in government benefits: a substantial prison sentence awaits you.

  **e. Providing Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner; Kinds of Sentences Available and the Need to Avoid Unwarranted Sentencing Disparities**

As the PSR notes, after excluding defendants who received a § 5K1.1 substantial assistance departure motion, 96% of defendants with Kammo's offense level and criminal history category received a prison sentence. (PSR ¶ 103.) The median length of imprisonment for those defendants was 38 months. (*Id.*) A higher sentence of 51 months is appropriate in this case given the nature and circumstances of Kammo's conduct, as well as his prior criminal history, which includes a substantial prior federal conviction that is not scored. (PSR ¶ 48.)

## III. Restitution

Under the Mandatory Victims Restitution Act, restitution is required as Kammo's offense involved fraud and deceit. 18 U.S.C. § 3663A(c)(1)(A)(ii). Furthermore, Kammo has agreed that restitution is due to every identifiable victim of his offense. (ECF No. 67, PageID.433.)

The government requests that restitution be awarded to the Small Business Administration in the amount of the loan principal fraudulently obtained by Kammo and his co-conspirators: $2,493,348.50. (PSR ¶ 90.); s*ee also United States v. Higgins*, No. 22-3538, 2023 WL 6536752, at *12 (6th Cir. Oct. 6, 2023) ("Restitution awards must reflect the victim's 'actual losses'") (citations omitted).

## IV.     Conclusion

Samer Kammo victimized the government, financial institutions, and honest taxpayers. For the reasons discussed above, the Court should impose a sentence of 51 months' imprisonment.

                                      Respectfully submitted,

                                      JEROME F. GORGON JR.
                                      United States Attorney

                                      s/Andrew J. Yahkind
                                      Assistant United States Attorney
                                      211 W. Fort Street, Suite 2001
                                      Detroit, MI  48226
                                      Phone: (313) 226-9565
                                      E-Mail: andrew.yahkind@usdoj.gov

Dated: February 5, 2026

## Certificate of Service

I certify that on February 5, 2026, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to the following:

Shawn Desai
Attorney for Samer Kammo

I also certify that I will, on today's date, email a copy of the foregoing document to Julie Grewe, the assigned probation officer in this matter.

s/Andrew J. Yahkind
Andrew J. Yahkind
Assistant U.S. Attorney
United States Attorney's Office